UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID EDWARD GILES,

    Petitioner,

v.

RON VAN BOENING,

    Respondent.

CASE NO. C07-0533-JCC

ORDER

This matter comes before the Court on Petitioner's Request for a Certificate of Appealability ("COA") (Dkt. No. 69). Respondent filed no response. The Court has carefully reviewed the request and the balance of relevant materials in the case file. The Court hereby DENIES the request, as follows.

## I. BACKGROUND

Petitioner is in state custody pursuant to a 2000 conviction by jury verdict of child molestation and child rape involving Petitioner's daughter. (Report and Recommendation 1–5 (Dkt. No. 56).) Petitioner appealed the jury verdict and his sentence to the Washington State Court of Appeals, raising most of the issues in his instant request for a COA. (*Id.* at 5–6 (Dkt. No. 56).) The court of appeals affirmed the conviction and denied a motion for reconsideration. (*Id.* at 6.) Thereafter, the Washington Supreme Court denied Petitioner's request for review of those same issues. (*Id.* at 6–7.) After Petitioner's personal restraint petition was denied by the Washington State Court of Appeals, and Washington Supreme Court denied his motion for discretionary review, on April 11, 2007, Petitioner

ORDER – 1

filed a habeas petition in this Court, again raising the issues in his state court appeal. (Dkt. No. 1.) The Court adopted the findings of fact and conclusions of law prepared by United States Magistrate Judge Mary Alice Theiler and denied Petitioner's habeas petition. (Dkt. No. 64.) Petitioner then filed a motion to alter or amend the judgment and to make additional fact findings, which the Court denied. Petitioner then filed the instant motion for a COA on July 15, 2008. (Dkt. No. 69.)

## II. APPLICABLE STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may not appeal the denial of his habeas petition without first being granted a COA. 28 U.S.C. § 2253(c)(1). To obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This standard requires petitioner to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Doe v. Woodford*, 508 F.3d 563, 567 (9th Cir. 2007) (brackets in original) (citing *Barefoot v. Estelle* 463 U.S. 880, 893 n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## III. ANALYSIS

Petitioner requests a COA "for all issues raised in [Petitioner's] habeas petition." (Request for COA 1 (Dkt. No. 69).) Accordingly, the Court will address each of those issues, in turn, below.

### A. Juror Bias

Petitioner argues that he is entitled to a COA on the ground that the trial court failed to excuse biased jurors. (*Id.* at 2–6.) In particular, he identifies five jurors who, he claims, should not have been seated on the jury because of alleged implied bias.

"The issue of implied bias . . . goes to the impartiality of the factfinder, a right guaranteed by the Sixth Amendment and a touchstone of the constitutional guarantee of a fair trial." *State v. Cho*, 30 P.3d 496, 503 (Wash. Ct. App. 2001). "[I]n exceptional cases the courts will draw a conclusive presumption of implied bias from a juror's factual circumstances." *State v. Boiko*, 156 P.3d 934, 937 (Wash. Ct. App.

ORDER – 2

2007); *see also Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (recognizing that implied bias may exist where there is a relationship between the juror and the case such that the "potential for substantial emotional involvement, adversely affecting impartiality, is inherent" or "it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances[.]") (internal citations and quotations omitted). However, the law is clear that a "juror with preconceived ideas need not be disqualified if that juror can set those ideas aside and 'decide the case on the basis of the evidence given at the trial and the law as given him by the court.'" *State v. Brett*, 892 P.2d 29, 40 (Wash. 1995) (quoting *State v. Rupe*, 743 P.2d 210 (Wash. 1987)). In addition, "[t]he trial judge is in the best position upon observation of the juror's demeanor to evaluate the responses and determine if the juror would be impartial." *Id.* at 40–41.

The Washington Court of Appeals rejected Petitioner's arguments on appeal with regard to the juror bias issue, holding that "although some [jurors] admitted to having strong feelings about child abuse, they all indicated that they could be objective and fair and defense trial counsel did not exercise a challenge for cause as to any of these jurors." (Opinion 22 (Dkt. No. 22, Exhibit 2).) This Court adopted the R&R also denying Petitioner's habeas petition as to this issue after a review of the voir dire transcripts.

Specifically, as for Juror No. 63 (seat 4), Ms. Kropp, when the prosecutor asked her during voir dire whether her position as a coordinator for youth programs would "cause a bias one way or another[,]" Ms. Kropp said, "No." (Tr. 39:10–40:10 (Dkt. No. 22, Ex. 46).) In addition, she explained at length that because of her personal and professional experiences, ". . . I truly believe that because of the knowledge, because of the training, because of the experiences I could be fair about this because I see both sides." (*Id.* at 41:20–23.)

Additionally, although Juror No. 3 (seat 3), Ms. Yamitsu, acknowledged that on the jury questionnaire, filled out prior to the voir dire hearing, she checked a box stating that she had questions about whether she could be fair, she explained that as voir dire proceeded, she felt that "I will be making

ORDER – 3

sure that I am hyper vigilant to be fair and to look at everything very clearly and with an open mind." (*Id*. at 31:7–18.) She also stated that:

> as a teacher, as well, I also know that I could be accused of such an act too. So as the [voir dire] day progressed, balancing the two, and knowing that I tend to – my job – it requires that I look at both sides and be as fair as I possibly can be. So throughout the day as the judge was asking questions I became much more comfortable. I have more of a commitment to fairness. Even if there are strong personal feelings that sense of fairness outweighs those.

MR. O'TOOLE: I think you said you would be vigilant to any feelings you might have that might arise?

JUROR NO. 3: Tabula rasa, just a clean slate coming into the courtroom.

(*Id*. at 32:1–15.)

As for Juror No. 35 (seat 5), Ms. Paux, although her daughter was the "victim of a sexual prank" by neighborhood kids that involved "childish stuff" when her daughter was young, Ms. Paux also explained that she learned of this incident years later when her daughter was in her twenties. (Tr. 32:1–13 (Dkt. No. 52, Ex. 46); Tr. 92:4–12 (Dkt. No. 52, Ex. 45).) She also indicated that she was "not really sure what happened[.]" (Tr. 32:11–13 (Dkt. No. 52, Ex. 46).) The Court does not find Ms. Paux's responses indicative of a substantial emotional involvement in the case such that she could not be impartial, nor that reasonable jurists could debate this issue. The trial court conducted an extensive voir dire over the course of three days, and excused many jurors who indicated, after several rounds of inquiry, that they could not be impartial. The trial court judge, who was in the best position to evaluate Ms. Paux's impartiality, did not find her responses to indicate that she could not be objective, and defense counsel did not challenge her for cause.

As for Juror No. 48 (seat 8), Mr. Fredell, again the transcript does not support Petitioner's claim that he should have been removed for implied bias. Defense counsel asked Mr. Fredell whether, with regard to a co-worker who was accused of a sex related crime, he formed any opinions about what the co-worker had done, Mr. Fredell answered, "No." (Tr. 33:21–25 (Dkt. No. 22, Ex. 46).)

ORDER – 4

Finally, as for Juror No. 29 (seat 7), Mr. Gordon, the transcript does not support Petitioner's claim that he should have been removed for implied bias. When the prosecutor asked him during voir dire what it means to be presumed innocent, he stated, "until all the evidence is presented and all the procedures are followed a person is presumed innocent until proven guilty beyond a reasonable doubt . . . I'm not here to make conclusions until all the evidence has been put before me." (Tr. 24:13–25:3 (Dkt. No. 52, Ex. 45).) Mr. Gordon also stated that he was "absolutely" able to follow that instruction when he previously served as a juror in a rape case. (*Id.* at 25:4–16.)

The Court does not find the issues Petitioner raises of implied juror bias debatable among jurists of reason, and will not grant a COA on this basis.

**B.     Video Playback to the Jury Outside Petitioner's Presence**

Petitioner next argues that the bailiff's replaying a videotape to the jury during deliberations while Petitioner was not present cannot be harmless error. (Request for COA 6 (Dkt. No. 69).) As the Court explained in its order denying Petitioner's request for an amended judgment, Supreme Court case law establishes that a petitioner seeking collateral review bears the burden of demonstrating that an error had a substantial and injurious effect on the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* (citations omitted).

The Court found that Petitioner could not establish prejudice from the jury's single replaying of a tape during deliberations that Petitioner admitted into evidence at trial because he offers no more than bare allegations, contradicted by the trial court judge, as to the prosecutor's presence for a portion of the video playback and the bailiff's purported hostility, and merely speculates as to the possibility of improper statements or conduct during the playback. Petitioner provided no basis for the Court to conclude that he suffered actual prejudice as a result of his exclusion from the playback of the video. *See, e.g., United States v. Kupau*, 781 F.2d 740, 743 (9th Cir. 1986) ("In this case, given the court's emphatic cautionary instructions, the obvious efforts of the court, by clearing the courtroom, to prevent any outside

ORDER – 5

influences, and the absence of any suggestion that extraneous matters came before the jury, we similarly hold that the error [in replaying taped evidence] was harmless beyond a reasonable doubt.") Accordingly, the Court does not find this issue debatable among jurists of reason.

### C. Pre-Accusatorial Delay

Petitioner next contends that a twenty-one month delay from the time he was accused until charges were filed warrants a grant of habeas relief because it significantly prejudiced his case. (Request for COA 13–14 (Dkt. No. 69).) According to Petitioner, the delay was a "strategy to exhaust [his] finances and erode testimonial resources[.]" (*Id.* at 14.)

As the Court has previously explained, courts have applied a two-prong test to establish a denial of due process as a result of preindictment delay. *See United States v. Sherlock*, 962 F.2d 1349, 1353–54 (9th Cir. 1989). The first part requires a showing of actual, non-speculative prejudice from the delay. *Id.* at 1354 (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). The Ninth Circuit has noted that "[t]he defendant has a heavy burden to prove that a preindictment delay caused actual prejudice: the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." *Id.* (quoting *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985)). The second prong requires a showing that "the delay, when balanced against the prosecution's reasons for it, offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Id.* at 1353–54 (citations omitted). When a petitioner fails to demonstrate actual, non-speculative prejudice resulting from the delay, the reasons for the delay need not be considered. *See United States v. Ross*, 123 F.3d 1181, 1187 (9th Cir. 1997).

The Court found that Petitioner failed to demonstrate specific, non-speculative prejudice resulting from the delay. The Court does not find that reasonable jurists could debate otherwise.

### D. Restrictions on Cross-Examination

Petitioner also argues that restrictions on defense counsel's cross-examination of two witnesses, Kerry Todd and Rhinee Yeung, were so strict as to make them unavailable, constituting a violation of

ORDER – 6

Petitioner's Sixth Amendment right to confrontation. (Request for COA 19 (Dkt. No. 69).)

The Court explained in its order denying Petitioner's request for an amended judgment that trial judges have much discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Factors to consider when making this determination include whether: "(1) . . . the excluded evidence was relevant; (2) . . . there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) . . . the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *United States v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007). If evidence is not relevant, its exclusion does not violate the Constitution. *Wood v. Alaska*, 957 F.2d 1544, 1549–50 (9th Cir. 1992). The evidence as to Yeung's writings and Todd's history was unsupported, irrelevant, and prejudicial. (R&R 38 (Dkt. No. 56).) Further, Petitioner's counsel conducted extensive cross-examinations of these witnesses on the issues critical to this case. (*Id.*) Accordingly, the Court does not find this issue debatable among reasonable jurists, and will got grant a COA on this ground.

### E. Prosecutorial Conduct

Petitioner next asserts that the Prosecutor's arguments in closing and rebuttal compromised his ability to obtain a fair trial. (Request for COA 26 (Dkt. No. 69 at 27).) Specifically, Petitioner points to the prosecutor's comment during closing that, with regard to D, Petitioner's son, a defense witness, " . . . the fact of the matter is, his father is sitting 10 feet away from him in this courtroom. How willing is he going to be to talk about what he's seen in his own home?" (*Id.*) Petitioner argues that this comment implicated Petitioner's constitutional right to be present at trial, and argues that the state is not "allowed to vouch for the untruthfulness of a defense witness." (*Id.* at 26–28 (Dkt. No. 69 at 27–29).) In addition, Petitioner argues that the prosecutor engaged in name-calling, and that the prosecutor misstated the evidence. (*Id.* at 29–30 (Dkt. No. 69 at 30–31).)

As the Court has explained previously, an accused person has the right to be present at trial. *See*

ORDER – 7

*United States v. Gagnon*, 470 U.S. 522, 526 (1985). Further, the jury may not infer anything from a defendant's decision not to testify at trial. *See* Ninth Circuit Model Criminal Jury Instruction 3.3 (2008). However, it does not infringe upon a defendant's constitutional rights when the prosecutor invites the jury to make proper inferences regarding the credibility of witnesses. The Court does not find it debatable among jurists of reason that the comment quoted above by the prosecutor did not encourage the jury to draw impermissible inferences about Petitioner's choice to be present, but instead invited a permissible inference regarding the credibility of a defense witness. Petitioner's argument that a prosecutor cannot attack the credibility of a defense witness is unfounded. *See United States v. Smith*, 962 F.2d 923, 934 (9th Cir. 1992) ("Attacks on the credibility of a defense witness are legitimate tools of advocacy . . ."). Moreover, for reasons fully explained in the Report and Recommendation adopted by this Court, denying Petitioner habeas relief, the Court finds that jurists of reason would not debate whether any of the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. (*See* R&R 40–43 (Dkt. No. 56).)

### F. Hearsay Testimony

Petitioner next asserts that his daughter's out-of-court statements, elicited during previous forensic interviews, should not have been admitted unless they were demonstrated to be reliable. (Request for COA 30 (Dkt. No. 69 at 31).) His contentions reflect a misunderstanding of the law pertaining to the confrontation clause and the Sixth Amendment. The introduction of hearsay evidence does not violate the confrontation clause when the declarant is in court and subject to cross-examination. *See United States v. Valdez-Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994). In this case, Petitioner's daughter testified in court and Petitioner failed to establish that he was denied effective cross-examination of this witness. (R&R 39 (Dkt. No. 56).) Accordingly, the Court does not find this issue debatable among jurists of reason.

### G. Ineffective Counsel

Petitioner next argues that he was denied the effective assistance of counsel. (Request for COA 34–59 (Dkt. No. 69 at 35–60).) For reasons thoroughly explained in the Report and Recommendation

ORDER – 8

adopted by this Court (R&R 13–26), the Court does not find it debatable among jurists of reason that Petitioner failed in his habeas petition to demonstrate the deficiency of his trial counsel's performance. Accordingly, the Court will not grant a COA on this basis.

### H. Statements by Witnesses

Petitioner next argues that opinions of his guilt offered by two lay witnesses at trial violated his right to due process. (Request for COA 59 (Dkt. No. 69 at 60).) The Court adopted the finding that Petitioner's assertions with regard to these two witnesses are unsupported by the record. (R&R 48 (Dkt. No. 56).) Additionally, as the Magistrate Judge concluded, it cannot not be said that the admission of the testimony targeted by Petitioner rendered the proceedings fundamentally unfair and resulted in actual prejudice, as required for habeas relief based on a state court's decisions as to admissibility of evidence. (*Id.*) Accordingly, the Court does not find this issue debatable among jurists of reason and will not grant a COA on this ground.

### I. Multiple Errors

Lastly, Petitioner asserts that multiple prejudicial errors so inflected the trial with unfairness as to constitute a due process violation. (Request for COA 60 (Dkt. No. 69 at 61).) However, Petitioner failed to establish prejudicial error individually or collectively, and as such, the Court finds that jurists of reason would not debate whether Petitioner was entitled to habeas relief on this ground.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Request for a Certificate of Appealability (Dkt. No. 69) is DENIED.

SO ORDERED this 9th day of September, 2008.

JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

ORDER – 9